**United States District Court**
**District of Massachusetts**

| | | |
|---|---|---|
| **Airton Rodrigues,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Civil Action No.s** |
| | ) | **26-14469-NMG** |
| **David Wesling, et al.,** | ) | **26-14498-NMG** |
| **Respondents.** | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the petitions for writ of habeas corpus (Docket No. 1 in 26-cv-14469 and Docket No. 1 in 26-cv-14498) of petitioner Airton Rodrigues ("Rodrigues" or "petitioner"). Rodrigues asserts that his detention by David Wesling and the other named respondents ("respondents") violates his statutory, regulatory and due process rights as a non-citizen and seeks immediate release from custody.

## I. Facts

Petitioner Airton Rodrigues, also known as Ailton Rodrigues and Ailton Rodriguez, is a citizen of Cape Verde. He entered the United States on July 29, 2004, on a visa authorizing him to remain in the country until October 27, 2004. He applied for

lawful permanent resident status in May, 2005 and his application was approved in February, 2006.

Between 2005 and 2012, petitioner was arrested several times. In September, 2009, petitioner admitted to sufficient facts on charges of armed robbery and assault by means of a dangerous weapon. Both charges were continued without a finding for two years.

In February, 2012, after a jury trial in Boston Municipal Court, petitioner was found guilty of assault and battery and assault and battery with a dangerous weapon. He was sentenced to a term in the house of correction, with part of it to be served and the balance suspended and was placed on probation through January 31, 2014. He filed a notice of appeal.

Immigration and Customs Enforcement ("ICE") took petitioner into custody in 2012. On August 2, 2012, according to respondents, an Immigration Judge terminated petitioner's permanent resident status and ordered him removed to Cape Verde. Petitioner appealed to the Board of Immigration Appeals on September 5, 2012, and withdrew the appeal on October 19, 2012. ICE issued a warrant of removal on October 24, 2012, citing 8 U.S.C. §1227(a)(2)(A)(i).

ICE did not remove petitioner. On April 29, 2013, ICE released petitioner on an Order of Supervision ("OSUP"). The OSUP required him to report to ICE as directed, stay in the

Commonwealth of Massachusetts absent notice and assist ICE in obtaining travel documents. Of relevance, the OSUP also directed petitioner not to "[v]iolate any Local, State or Federal laws" and not to "commit any crimes or be associated with any criminal activity while on this Order of Supervision."

On September 29, 2026, petitioner was arrested for assault and battery on a family or household member. On September 30, 2026, ICE took petitioner into custody in connection with a proceeding at a New Bedford courthouse.

That same day, an ICE Assistant Field Office Director issued a Notice of Revocation of Release ("Notice"). The Notice revoked the 2013 OSUP pursuant to 8 C.F.R. §241.13(i) on the ground that petitioner violated a condition of release, citing the arrest. The Notice did not state that ICE had obtained a travel document or scheduled a removal date. He did not sign the Notice.

A deportation officer conducted an informal interview with petitioner on September 30, 2026. In a handwritten statement, petitioner stated that he "deserve[s] a second chance" because he has lived in the United States for 22 years. He also wrote that he has reported by email since his 2013 release, worked and supported his family and wishes "to fix [his] immigration issues as well as resolve [his] criminal issues." He provided no documents. ICE also issued a new warrant of removal that day,

citing 8 U.S.C. §1227(a)(2)(A)(iii), along with notices regarding his obligation to assist in his removal.

Two petitions for a writ of habeas corpus were filed on petitioner's behalf, by different counsel, within two days of his detention.

The first petition was filed on September 30, 2026, by pro bono counsel and identifies petitioner as "Adihison Rodrigues." Prepared before counsel had access to petitioner's file, it alleges, in a single count, that the continued detention of petitioner violates his due process rights as a non-citizen.

The second petition was filed on October 2, 2026, and identifies petitioner as "Airton Rodrigues." That petition asserts, inter alia, that ICE was without authority to re-detain petitioner following his release from detention after the removal period and that ICE failed to follow the revocation procedures in 8 C.F.R. §241.4(l) thereby violating petitioner's due process rights. The second petition seeks petitioner's immediate release or, in the alternative, a bond hearing before this Court, along with an order barring transfer.

Both petitions challenge the same custody of the same person and name substantially the same respondents. The Court consolidated the two actions on October 7, 2026.

Respondents filed a single response, captioned in the name of Airton Rodrigues contending that petitioner is lawfully

detained under 8 C.F.R. §241.13(i)(1). In their view, the petitioner's arrest in September, 2026 was for violation of the condition in the OSUP against committing crimes and they assert that the regulation requires only a violation of a condition, not a conviction. Respondents further contend that the petitioner's detention is consistent with due process.

## II. Legal Standard

A court may grant habeas relief to a petitioner held in custody in violation of the Constitution or laws of the United States. 28 U.S.C. §2241(c)(3). That authority extends to challenges to the lawfulness of immigration detention, including detention after a final order of removal. Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

When a non-citizen is ordered removed, the Attorney General is required to remove that person within 90 days, a period known as the "removal period." 8 U.S.C. §1231(a)(1)(A). If the non-citizen is not removed within that period, he or she is subject to supervision under regulations prescribed by the Attorney General. Id. §1231(a)(3). Certain non-citizens, including those removable under §1227(a)(2),

> may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

Id. §1231(a)(6). That detention is limited to a period reasonably necessary to bring about removal and up to six months is presumptively reasonable. Zadvydas, 533 U.S. at 699-701.

When a non-citizen is released on an OSUP pursuant to 8 C.F.R. §241.13, ICE may revoke that release on either of two grounds: violation of the conditions of release or changed circumstances. See 8 C.F.R. §241.13(i). Under the former, a non-citizen who violates a condition of release "may be returned to custody." Id. §241.13(i)(1). Under the latter, ICE may revoke release if, because of changed circumstances, it determines that there is a significant likelihood of removal in the reasonably foreseeable future. Id. §241.13(i)(2).

On either ground, ICE must 1) notify the non-citizen of the reasons for revocation and 2) conduct an initial informal interview promptly after his or her return to custody, at which the non-citizen may respond to those reasons. Id. §241.13(i)(3). The non-citizen may submit evidence that there is no significant likelihood of removal in the reasonably foreseeable future or that he or she has not violated the OSUP. Id. The ensuing revocation custody review must evaluate any contested facts relevant to the revocation and determine whether those facts warrant revocation and continued detention. Id.

ICE, just as with other governmental agencies, must comply with its own regulations. See United States ex rel. Accardi v.

Shaughnessy, 347 U.S. 260, 266-68 (1954); Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017).

Finally, the Due Process Clause of the Fifth Amendment applies to all persons within the United States, including non-citizens. Zadvydas, 533 U.S. at 693. A person on conditional release has a liberty interest protected by due process. See Morrissey v. Brewer, 408 U.S. 471, 482 (1972). The First Circuit Court of Appeals has held that, for detention pending removal proceedings under 8 U.S.C. §1226(a), due process requires the government to prove dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021).

## III. Discussion

### A. ICE's Authority

Petitioner first challenges ICE's authority to detain him at all. He declares that 8 U.S.C. §1231(a)(6) authorizes only the continued detention of a person held through the removal period, not the re-detention of someone released years earlier. He also contends that §1231(a)(3), by listing the conditions of supervised release without mentioning detention, excludes it. Both contentions are unavailing.

The record shows that petitioner was ordered removed in 2012 pursuant to 8 U.S.C. §1227(a)(2) because of criminal

charges against him. He therefore falls within 8 U.S.C. §1231(a)(6). That provision conditions release on continued supervision, which would be meaningless if a violation could not lead back to custody. The implementing regulations confirm that it can. See 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1). Accordingly, petitioner's expressio unius argument fails because it reads §1231(a)(3) in isolation and ignores §1231(a)(6), which authorizes ICE to re-detain non-citizens.

The caselaw upon which petitioner relies, Da Silva Lima v. Wesling, No. 26-cv-12266-IT (D. Mass. May 27, 2026), and Diallo v. Joyce, 817 F. Supp. 3d 202 (S.D.N.Y. 2025), do not require a different result. Those decisions held that §1231(a)(6) does not authorize an initial detention after the removal period has ended when the non-citizen was never detained during that period. Da Silva Lima, slip op. at 6; Diallo, 817 F. Supp. 3d at 205-07. In Da Silva Lima, District Judge Talwani recognized, however, that where the government releases a non-citizen following the removal period, it may later revoke that release and detain him, so long as it follows the relevant regulations. Da Silva Lima, slip op. at 7. Here, ICE detained petitioner in 2012 and released him on a signed OSUP in 2013. ICE's subsequent revocation of that OSUP falls within the authority Da Silva Lima recognized.

The Court turns next to whether ICE had grounds to re-detain petitioner. The OSUP does not state the regulatory basis for petitioner's 2013 release but ICE invoked §241.13(i) upon revocation. The Court therefore infers that petitioner was released under that section and petitioner has not asserted otherwise.

Under §241.13(i)(1), a non-citizen released under an order of supervision who "violates any of the conditions of release may be returned to custody." Petitioner's OSUP required him not to violate any local, state or federal laws and not to "commit any crimes or be associated with any criminal activity." ICE revoked petitioner's release because, one day earlier, he had been arrested on a charge of assault and battery on a family or household member. Petitioner does not dispute the arrest, and in his interview statement he acknowledged pending "criminal issues." Accordingly, respondents had the authority to revoke petitioner's release and to re-detain him.

**B. ICE's Compliance with Regulations**

The authority of ICE to revoke release does not end the inquiry because ICE must also follow its own regulations in exercising that authority. Accardi, 347 U.S. at 266-68. Several sessions of this Court, including this one, have granted habeas relief when ICE revoked release without complying with the notice and informal interview requirements of the regulations.

See, e.g., Rombot, 296 F. Supp. 3d at 388; Sesay v. Diamantakos, No. 26-cv-14231-NMG (D. Mass. Oct. 7, 2026).

Petitioner avers that he received neither notice nor an informal interview as required under 8 C.F.R. §241.13(i)(3). The record shows otherwise.

First, ICE issued a written Notice of Revocation of Release on September 30, 2026. The Notice identified both the condition violated and its factual basis: petitioner's arrest on September 29, 2026, for assault and battery on a family or household member. The Notice was served on petitioner that evening and he did not sign it. That is notice of "the reasons for revocation." 8 C.F.R. §241.13(i)(3).

Second, ICE conducted an informal interview with petitioner on the day he was returned to custody, at which petitioner gave a handwritten statement responding to the revocation. An interview held the day he returned to custody is "prompt," and nothing in the regulations requires the presence of counsel.

Accordingly, ICE complied with the notice and interview requirements of §241.13(i)(3), and petitioner's regulatory challenge fails.

**C. Due Process**

Petitioner also asserts that his re-detention without changed circumstances or a hearing violates due process. Under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the Court, in

examining petitioner's detention, considers the private interest affected, the risk of erroneous deprivation and the government's interest.

Petitioner's interest in remaining at liberty after 13 years on supervised release is substantial. See Morrissey, 408 U.S. at 482. The risk of erroneous deprivation, however, is low. ICE re-detained petitioner because of a substantial change in circumstances, i.e., his arrest on September 29, 2026, and it gave him written notice of that reason and an opportunity to respond. He does not dispute the arrest.

The government's interest in carrying out a final order of removal is considerable. See Nken v. Holder, 556 U.S. 418, 436 (2009); Zadvydas, 533 U.S. at 690-91. Petitioner's reliance on Hernandez-Lara, 10 F.4th at 41, is misplaced because that case concerned the detention of a non-citizen under §1226(a) prior to removal. By contrast, §1231(a)(6) does not require a bond hearing. Johnson v. Arteaga-Martinez, 596 U.S. 573, 581 (2022). The petitioner therefore received due process.

To the extent petitioner challenges the length of his detention, that claim is premature. Post-order detention is presumptively reasonable for six months, Zadvydas, 533 U.S. at 701, and petitioner has been detained only since September 30, 2026, less than two months. That claim will be dismissed without prejudice to renewal if petitioner's detention extends

beyond six months without a significant likelihood of removal in the reasonably foreseeable future.

**D. APA and Fourth Amendment**

Finally, petitioner contends that his re-detention violates the Administrative Procedure Act ("APA") because 1) it was arbitrary and capricious, 2) the revocation regulations exceed ICE's authority under §1231(a)(3) and 3) ICE arrested him at a courthouse. He further maintains that his arrest violated the Fourth Amendment because it was made without a warrant or probable cause. Those claims are unavailing.

A court's authority to review a governmental agency action pursuant to the APA is limited to actions "for which there is no other adequate remedy in a court." 5 U.S.C. §704. A petition for writ of habeas corpus provides such a remedy for a challenge to custody and, thus, APA review is unwarranted.

Moreover, because §1231(a)(6) authorizes re-detention, the revocation regulations do not exceed ICE's statutory authority. Petitioner's challenge to his courthouse arrest is likewise without merit. The injunction in Ryan v. ICE, 382 F. Supp. 3d 142 (D. Mass. 2019), on which petitioner relies, was vacated on appeal, 974 F.3d 9 (1st Cir. 2020), and the Massachusetts statute he invokes had not taken effect at the time of his arrest. Nor was the arrest warrantless. ICE held an outstanding warrant of removal from 2012 and issued another on

September 30, 2026. In any event, an unlawful arrest does not entitle a non-citizen to be released from otherwise authorized custody. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984).

**ORDER**

For the foregoing reasons, the petitions for writ of habeas corpus (Docket No. 1 in 26-cv-14469 and Docket No. 1 in 26-cv-14498) are **DENIED**. Any claim challenging the duration of petitioner's detention is **DISMISSED** without prejudice to renewal if his detention extends beyond six months without a significant likelihood of removal in the reasonably foreseeable future.

Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated: November 20, 2026